# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**FRANK FOSTER, et al.,**

        **Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE
COMPANY,**

        **Defendant.**

Case No. 2:08-cv-00020
Judge Edmund A. Sargus, Jr.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court upon the parties' Cross-Motions for Summary Judgment (Docs. 75, 77.) For the reasons that follow, both Motions are denied.

## I.

### A. The Parties' Claims

Plaintiffs are current and former Special Investigators and Senior Special Investigators (collectively referred to hereinafter as "Special Investigators") employed by Nationwide Mutual Insurance Company ("Nationwide"). In this collective action, Plaintiffs, on behalf of themselves and similarly situated class members, allege that Nationwide violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA" or "Act"), by failing to pay its Special Investigators overtime compensation for time worked in excess of 40 hours per week. Plaintiffs contend that Nationwide's conduct in this regard was willful, the consequence of which is to extend the applicable statute of

limitations period by one year. They also seek liquidated damages by alleging that Nationwide acted in bad faith.

Plaintiffs further assert supplemental state law claims under California and New York law. Specifically, Plaintiff Frank Foster brings this class action on behalf of himself and similarly situated class members, alleging that Nationwide violated California labor laws by failing to provide overtime compensation, failing to provide meal breaks or authorize rest breaks, and failing to provide accurate itemized wage statements. Moreover, Plaintiff Foster contends that such conduct constitutes unfair business acts and practices under California law. Lastly, individual Plaintiffs residing within the State of New York allege that Nationwide violated New York law by failing to provide overtime compensation.

In their Motion for Partial Summary Judgment, Plaintiffs contend that they are not exempt from the FLSA's overtime requirement pursuant to the Act's administrative exemption. Plaintiffs further contend that their alleged damages under the FLSA should be calculated using the "time and one-half" method, as opposed to the "fluctuating workweek" method.

Nationwide moves for summary judgment on all of Plaintiffs' claims. Most significantly, Nationwide maintains that the FLSA's administrative exemption applies to its Special Investigators, thus precluding Plaintiffs from recovering the overtime premium provided for by the Act. Largely on this basis, Nationwide asserts that it is also entitled to summary judgment on Plaintiffs' New York and California state law claims. In addition, Nationwide contends that even if it misclassified Plaintiffs as exempt from the FLSA's overtime requirement, it did not do so wilfully or in bad faith. Furthermore, Nationwide challenges Plaintiffs' position regarding the calculation of overtime compensation. In the event that it is found to have violated the FLSA, Nationwide submits that

2

Plaintiffs' damages should be computed in accordance with the "fluctuating workweek" method.

## B. Factual Background

Nationwide is a provider of a wide range of insurance services, including vehicle, property, commercial, and life insurance products. Nationwide's Special Investigators are employed in the company's Special Investigations Unit ("SIU"). Special Investigators are paid a fixed annual salary, which ranges from $51,400 to $84,400. (Warnock Dep. at 30; Mikusa Aff. at ¶ 6, ¶7.) Special Investigators occasionally work more than 40 hours per week. (Warnock Dep at 34-35; Frearson Dep. at 97.) They are classified by Nationwide as exempt from the FLSA's overtime requirement and thus do not receive an overtime premium. (Mikusa Aff at ¶ 8.)

Nationwide's SIU is comprised of six regional operations. (Herman Dep. at 40.) SIU Managers in each region supervise the region's Special Investigators. (*Id.* at 41-43.) The SIU works in partnership with Nationwide's Claims Department and is primarily responsible with protecting "the assets of Nationwide and [its] policyholders." (*Id.* at 26, 176.) It performs this function by investigating potentially fraudulent insurance claims. (*Id.* at 176-77; Burcina Dep. at 10.) The SIU also conducts fraud-awareness training for Claims personnel and insurance agents. (Herman Dep. at 176-77; Barton Dep. at 81-82; Byrd Dep. at 66-69.)

The investigation into a potentially fraudulent insurance claim commences with a referral from Nationwide's Claims Department. Claims Representatives pass along claims with indicators of fraud to their respective regional SIU operations, where they are typically reviewed by an SIU Manager. (Herman Dep. at 107-108.) The SIU Manager may choose either to reject or accept a claim referral. (*Id.* at 108; Barton Dep. at 136.) If a referral is accepted, the claim is then assigned

to a Special Investigator. (Herman Dep. at 57-58, 108.) On occasion, Special Investigators have been involved in deciding whether to reject a referral. (Byrd Dep. at 50-51.)

Once a referral has been assigned to a Special Investigator, he or she is expected to review the file, contact the referring Claims Representative, and develop an "action plan" for the investigation. (Doty Dep. at 158; Herman Dep. at 109.) An action plan outlines the scope of an investigation and the manner in which it will be conducted. (Doty Dep. at 157; Herman Dep. at 110; Rider Dep. at 35.) For the most part, Special Investigators either formulate the action plan in consultation with the referring Claims Representative or draft the plan and then seek input from the Claims Representative. (Herman Dep. at 110; Rider Dep. at 35; Byrd Dep. at 133.) On occasion, however, Special Investigators have independently devised action plans. (Ryder Dep. at 151; Byrd Dep. at 133.) While Special Investigators submit their action plans into Nationwide's electronic claims system, the plans do no require approval by SIU Managers. (Herman Dep. at 148; Byrd Dep. at 132; Kiefner Dep. at 128.)

During an actual investigation into a potentially fraudulent claim, Special Investigators gather relevant facts through a variety of investigative methods, including witness interviews. (Herman Dep. Exh. 8.) While some potential witnesses may be identified prior to the start of the investigation, the decision to conduct a particular interview is made by the Special Investigator. (Warnock Dep. at 190.) Although Special Investigators may be provided with some guidance with respect to how to structure an interview, they decide which substantive questions to ask. (Kiefner Dep. at 99-101; Doty Dep. at 149-50; Burcina Dep. at 221.) In the event that a Special Investigator believes that eliciting a witness's testimony under oath would aid in the investigation, the Special Investigator may recommend the taking of what is referred to as an Examination Under Oath

4

("EUO"), a proceeding similar to a deposition. (Schmidt Dep. at 95; Burcina Dep. at 31; Barton Dep. at 69.) Generally, an EUO may not proceed without authorization from the referring Claims Representative. (Barton Dep. at 146; Herman Dep. at 142.) Once authorized, the EUO may be conducted by either the Special Investigator or an attorney. (Burcina Dep. at 32; Frearson Dep. at 33; Barton Dep. at 69.)

Special Investigators may also recommend the hiring of outside experts to assist in their investigative efforts. (Foster Dep. at 200-01; Herman Dep. at 162.) The decision whether to retain these third parties lies solely with the referring Claims Representatives. (Herman Dep. at 162-63.) Special Investigators, however, are permitted to select the experts from a pre-approved list. (Savage Dep. at 111-12; Foster Dep. at 166.) Once hired, Special Investigators are involved in monitoring the work that the experts conduct. (Burcina Dep. at 41; Kiefner Dep. at 164-65.)

Throughout the investigative process, Special Investigators are required to log their activity on each file in Nationwide's electronic claims system. They are to account for their work performed with respect to each task laid out in their action plans in a timely manner. (Herman Dep. at 148, Exh. 8; Kiefner Dep. at 109, 111.) If a Special Investigator concludes that a task in the action plan has become unnecessary, he or she is expected to provide an explanation in the claims system. (Foster Dep. at 162; Savage Dep. at 113-14.) In addition, if a Special Investigator follows a new lead, the action plan is to be updated accordingly. (Herman Dep. Exh. 8) Once an investigation is closed, the Special Investigator is required to reduce the findings yielded by the investigation into a summary and enter it into the claims system. (Phifer Dep. at 75-76.)

If a Special Investigator concludes that a claim is "suspicious" and "may warrant criminal investigation," the Special Investigator may refer the claim to the National Insurance Crime Bureau

5

or an appropriate state agency. (Barton Dep. at 95; Fearson Dep. at 102.) Referral decisions are made either independently by the Special Investigator or in consultation with his or her SIU Manager. (Foster Dep. at 114; Frearson Dep. at 103; Rider Dep. at 94.) In addition, Special Investigators may identify subrogation opportunities during the course of their investigations. (Byrd Dep. at 175; Kiefner Dep. at 116-17).

The investigative work performed by Special Investigators is reviewed and evaluated by use of an auditing tool called Accelerated Claims Excellence ("ACE"). (Herman Dep. at 15; Phifer Dep. at 9). ACE is comprised of a series of questions termed File Review Questionnaires ("FRQs"). (Phifer Dep. at 25; Herman Dep. Exh. 8.) For each FRQ, there is a corresponding "intent," which expands upon the FRQ and clarifies its main focus. (Phifer. Dep. at 73; Herman Dep. Exh. 8.) Not every single file assigned to a Special Investigator is audited. (Phifer Dep. at 85-90; Herman Dep. at 174-75.) The results from each ACE audit are computed into a percentile score, which is then evaluated as part of a Special Investigator's annual review. (Phifer Dep. at 30-31, 86-87, 166.)

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more

6

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rely merely on allegations or denials . . . rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

In the instant matter, the parties have filed cross-motions for summary judgment on two issues – the applicability of the FLSA's administrative exemption to Plaintiffs and the proper method of calculating overtime compensation for Plaintiffs in the event that Nationwide is found liable under the FLSA. For each of these issues, each party, as a movant for summary judgment, bears the burden

of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on its own Rule 56 motion does not automatically indicate that the opposing party has satisfied the burden and should be granted summary judgment on its motion. In reviewing cross-motions for summary judgment, a district court must "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citing *John v. State of La. (Bd. of Tr. for State Coll. & Univ.)*, 757 F.2d 698, 705 (5th Cir.1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.*, 929 F.2d at 248. The Court will consider each party's motion separately, determining, for each side, whether a judgment may be entered in accordance with the standards set out in Rule 56. Both motions must be denied if the Court finds that there is a genuine issue of material fact. If, however, there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the Court will render judgment accordingly.

## III.

### A. The FLSA's Administrative Exemption

As dictated by the FLSA, an employer is required pay its employees at least one and one-half

times their regular rate of pay for all time worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). Certain classes of employees, however, are placed beyond the reach of the Act's overtime provisions and are deemed exempt. Specifically, the FLSA's overtime requirement does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

The Motions for Summary Judgment presently before the Court primarily concern the applicability of the administrative exemption to Plaintiffs. The scope of this exemption has been defined by interpretative regulations issued by the Department of Labor ("DOL"). In accordance with these regulations, the administrative exemption is comprised of three elements. First, the employee must be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week." 29 C.F.R. § 541.200(a)(1). Second, the employee's "primary duty" must be comprised of "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). And finally, the employee's "primary duty" must "include[ ] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).

In a dispute over whether an employee is exempt from the FLSA's overtime requirement, the employer bears the burden of establishing that the employee qualifies for the exemption. *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004) (citing *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997)). Moreover, the exemption is to be narrowly construed against the employer. *Id.* The burden is on the employer to establish each element of the exemption by a preponderance of the evidence. *Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007).

In view of Nationwide's burden of proof, Plaintiffs may be entitled to summary judgment

9

on the issue of whether they fall within the FLSA's administrative exemption, unless Nationwide "can come forward with evidence at least creating a genuine issue of material fact as to whether [Plaintiffs] meet[ ] each and every element of the exemption." *Martin*, 381 F.3d at 578. Meanwhile, Nationwide is entitled to summary judgment only if it establishes that Plaintiffs do, in fact, meet each and every element of the exemption. In other words, Nationwide must establish that no reasonable trier of fact could find that: (1) its Special Investigators do not receive a salary in excess of $455 per week, (2) their primary duty is not related to Nationwide's management or general business operations, and (3) their primary duty does not include the exercise of discretion and independent judgment regarding matters of significance.

### 1. Salary

With respect to the first element of the administrative exemption, there is no factual dispute. Neither party contests the fact that Nationwide's Special Investigators are paid on a salary basis at a rate that exceeds $455 per week. Indeed, Special Investigators receive an annual salary that ranges from $51,400 to $84,400. (Mikusa Aff. at ¶ 6, ¶7.) Even at the low end of this salary range, Special Investigators are paid more than $988 per week.

Rather, the parties' disagreement as to the applicability of the exemption is centered on its second and third elements. Consequently, an analysis of each of these elements, as it relates to Special Investigators employed by Nationwide, follows.

### 2. Primary Duty and Relationship to Management and General Business Operations

The Court must first assess the "primary duty" of Nationwide's Special Investigators. The

10

DOL regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The evaluation of an employee's primary duty is a fact-intensive inquiry that is to be based on the "character of the employee's job as a whole." *Id.* Plaintiffs contend that the primary duty of Special Investigators is "the investigation of potentially non-meritorious claims made by insureds or third parties." (Pls' Mot. For Part. Summ. Jdgmt., p. 27.) Meanwhile, Nationwide characterizes its Special Investigators' primary duty in a somewhat broader scope. In its view, it is comprised of "protecting Nationwide's assets against the threat of insurance fraud." (Def's Mot. For Summ. Jdgmt., p. 24.) In particular, Nationwide asserts that the primary duty of a Special Investigator extends beyond the mere investigation into suspicious claims and into "training Claims and other personnel on recognizing insurance fraud." (*Id.*)

At the very least, the primary duty of Special Investigators is to investigate potentially fraudulent insurance claims. The record is too imprecise, however, to say whether a Special Investigator's primary duty also encompasses his or her work related to fraud-awareness training. Specifically, the evidence fails elucidate the extent to which Special Investigators engage in such training. For instance, Plaintiff Robert Mayfield stated that he conducted 29 training sessions in 2004, and Plaintiff Mark Kiefner testified that he conducted 13 sessions in 2005. (Mayfield Dep. at 128, Exh. 5; Kiefner Dep. at 66.) In contrast, Plaintiff Jacquelyn Rider testified that she did not conduct any sessions 2008, and only two or three in 2007. (Rider Dep. at 127-28.)

In any event, the factual dispute over the precise scope of Special Investigators' primary duty is not dispositive of the Court's resolution of this matter. As discussed below, regardless of whether the Court adheres to the restricted or expansive view of a Special Investigator's primary duty, it reaches the same conclusions with respect to the remaining elements of the administrative

11

exemption.

These elements require the Court to determine whether the record establishes, as a matter of law, that the primary duty of Special Investigators – however precisely delineated – is "directly related to the management or general business operations" of Nationwide and "include[s] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

The second element of the administrative exemption focuses on "the type of work performed by [an] employee." 29 C.F.R. § 541.201(a). The DOL regulations explain that work directly related to the management or general business operations of an employer is that which is intertwined with "assisting with the running or servicing of the business . . . ." *Id.* Such work includes, but is not limited to:

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

The regulations also distinguish the "servicing" of a business from "working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). This distinction has given rise to what is commonly referred to as the "administrative/production dichotomy." *See, e.g., Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 402 (6th Cir. 2004). Under this dichotomy, employees who are engaged in work related to their employers' administrative operations may qualify for the administrative exemption, while those who perform "production" work cannot. *See Martin*, 381 F.3d at 582.

12

The parties focus heavily on the administrative/production dichotomy, each asserting that Special Investigators fall on a particular side of the dichotomy. Plaintiffs contend that Special Investigators are involved in the production aspect of Nationwide's operations because they help "carry out" the promise that Nationwide "is in the business of selling." (Pls' Mot. For Part. Summ. Jdgmt., p. 31.) Nationwide, on the other hand, characterizes the work performed by its Special Investigators as administrative in nature. According to Nationwide, Special Investigators service Nationwide's business by "guarding against fraud through investigation, counseling, and training." (Def's Mot. For Summ. Jdgmt., p. 28.)

"Under the administrative/production dichotomy analysis, the job of 'production' employees 'is to generate (*i.e.* 'produce') the very product or service that the employer's business offers to the public.'" *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 517 (6th Cir. 2004) (quoting *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997)). Insurance companies, like Nationwide, are in the business of creating and marketing insurance policies to the public. *See Jastremski v. Safeco Ins. Cos.*, 243 F.Supp. 2d 743, 753 (N.D. Ohio 2003) (finding that an insurance claims adjuster performed administrative duties because his employer "was in the business of producing insurance policies, not settling claims"); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) ("An insurance company's product is its policies, and Appellants' duties did not include writing and selling insurance."). Because Nationwide's Special Investigators are not involved in either the underwriting or selling of such policies – Nationwide's "product" – they cannot be fairly characterized as "production" employees. *See Cheatham* 465 F.3d at 585.

As noted by the Sixth Circuit, however, "the regulations do not set up an absolute dichotomy under which all work must either be classified as production or administrative." *Martin*, 318 F.3d

13

at 582; *see Schaefer*, 358 F.3d at 402-03. Thus, the fact that Special Investigators are not involved in generating insurance policies is not determinative; nor is the fact that Nationwide is not in the business of providing investigative services or fraud-awareness training to the public. *See Schaefer*, 358 F.3d at 402; *see also* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22141 (2004) ("Only when work falls 'squarely on the production side of the line,' has the administration/production dichotomy been determinative."). Rather, the determinative issue is whether the primary duty of Special Investigators directly relates to the "servicing" of Nationwide's business.

Plaintiffs contend that the DOL, through its regulations and various Opinion Letters, has "consistently determined that investigators do not qualify for the administrative exemption." (Pls' Mot. In Opp. to Def's Mot. For Summ. Jdgmt., p. 19.) The DOL, however, does not treat an employee's job title as a sufficient basis for determining whether he or she is exempt under the FLSA. 29 C.F.R. § 541.2. For purposes of applying the second element of the administrative exemption, the focus must be on the employee's work and its relationship to the employer's business operations. Looking beyond the references to "investigators" found in these regulations and Opinion Letters, the Court finds that such sources are not particularly helpful to its inquiry into whether Nationwide's Special Investigators satisfy the second element of the administrative exemption. Most notably, in each of the Opinion Letters referenced by Plaintiffs, investigative services – in one form or another – comprised the core business function of the employer. *See* Opinion Letter from Dept. of Labor, Wage and Hour Div. (Aug. 19, 2005), 2005 WL 3308592 (employer provided contract background investigation services to governmental agency); Opinion Letter from Dept. of Labor, Wage and Hour Div. (April 17, 1998), 1998 WL 852783 (employer was responsible for "enforcing

14

State liquor law statutes and regulations"); Opinion Letter from Dept. of Labor, Wage and Hour Div. (Jan. 23, 1998), 1998 WL 852752 (employer provided "medical examiner services" to counties); Opinion Letter from Dept. of Labor, Wage and Hour Div. (Sept. 12,1997), 1997 WL 971811 (employer had "the conduct of investigations as its business function"). Relying on the administrative/production dichotomy in rendering each of these opinions, the DOL found that the investigators who work for these employers were not subject to the administrative exemption.[1]

The provision in the regulations that mentions investigators, and to which Plaintiffs cite, provides as follows:

> The section 13(a)(1) exemptions . . . do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, *investigators*, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees . . . who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

29 C.F.R. § 541.3(b)(1) (emphasis added). When this reference to "investigators" is read in the context of the entire regulation, it is clear that the regulation pertains to law enforcement and safety personnel – not those who perform investigative duties in the private sector. *See* 69 Fed. Reg. at

---

[1] The various cases cited by Plaintiffs to support their contention that Nationwide's Special Investigators do not perform administrative duties can be distinguished on similar grounds. *See Reich v. Am. Int'l Adjustment Co., Inc.*, 902 F.Supp. 321, 325 (D. Conn. 1994) (holding automobile damage appraisers nonexempt; employer was "in the business of resolving damage claims"); *Fleming v. Carpenters/Contractors Cooperation Comm., Inc.*, 834 F.Supp. 323, 328 (S.D. Cal. 1993) (holding field investigators who were responsible for investigating public works projects for labor violations nonexempt; employer was in the "business of enforcing federal and state labor laws"); *Adam v. U.S.*, 26 Cl. Ct. 782, 788 (Cl. Ct. 1992) (holding border patrol agents employed by the Immigration and Naturalization Service nonexempt); *Ahern v. New York*, 807 F.Supp. 919, 926 (N.D.N.Y. 1992) (holding police investigators nonexempt); *Harris v. District of Columbia*, 741 F.Supp. 254, 262 (D.D.C. 1990) (holding supervisory housing inspectors nonexempt; employer – a branch in a municipal agency – "produced" housing inspections).

15

22129 (stating that the purpose of 29 C.F.R. § 541.3(b)(1) was to clarify that "police officers, fire fighters, paramedics, EMTs *and other first responders* are entitled to overtime pay") (emphasis added). Because of the missions of their respective governmental agencies and departments, the individuals delineated in this regulation are most accurately characterized as "production" employees. The work that they perform falls "squarely on the production side of the line." 69 Fed. Reg at 22141; *see, e.g., Reich v. New York*, 3 F.3d 581, 587 (2d Cir. 1993) (finding state police investigators nonexempt because their investigative bureau "is in the law enforcement 'business'" and "the primary function of the Investigators within that business is to conduct – or 'produce' – its criminal investigations").

For its part, Nationwide supports its assertion that its Special Investigators service its business by drawing parallels between their position and that of an insurance claims adjuster. The regulations provide:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption . . . if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a). Case law strongly supports the proposition that insurance claims adjusters perform administrative duties. *See, e.g., Cheatham* 465 F.3d at 585 (finding that insurance claims adjusters were involved in their employer's administrative operations); *Murray v. Ohio Cas. Corp.*, 2005 WL 2373857, at *6 (S.D. Ohio Sept. 27, 2005) (same).

Nationwide highlights the overlap between claims adjusting duties such as these – in particular, those related to investigative work – and the tasks performed by its Special Investigators. It also focuses on the support role that Special Investigators play in relation to Nationwide's Claims

16

Department. It characterizes its Special Investigators as being "integrally involved in the claims administration process." (Def's Mot. In Opp. to Pls' Mot. For Part. Summ. Jdgmt., p. 20.)

The Court concludes that the primary duty of Nationwide's Special Investigators is directly related to Nationwide's general business operations. Nationwide's SIU works in partnership with Nationwide's Claims Department. By investigating potentially fraudulent insurance claims, Special Investigators assist Nationwide's Claims Department in adjusting such claims. A finding of fraud will certainly bear on a Claims Representative's decisions and recommendations regarding coverage, settlement, and litigation. Because the DOL regulations and case law deem claims adjusting to be administrative work, it follows that investigative services performed in direct furtherance of claims adjusting efforts is administrative work, as well.

### 3. Discretion and Independent Judgment

The third and final element of the administrative exemption focuses on "the level or nature of the work" performed by an employee. 69 Fed. Reg. at 22144. It inquires into whether an employee, in performing his or her primary duty, exercises "discretion and independent judgment" regarding "matters of significance." 29 C.F.R. § 541.200(a)(3). In determining whether an employee exercises discretion and independent judgment, it is necessary to consider "all the facts involved in the particular employment situation in which the question arises." 29 C.F.R. § 541.202(b). The regulations lay out multiple factors that are relevant to such an inquiry, including:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree ... whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from

17

established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management . . . whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.*

As dictated by the regulations, the exercise of discretion and independent judgment generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). However, an employee does not exercise discretion and independent judgment if his or her work amounts to nothing more than "the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e).

The regulations further provide that although "[t]he exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision . . . employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). Indeed, "decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." *Id.*

Plaintiffs portray Nationwide's Special Investigators as mere fact-gatherers who perform their investigative tasks in a highly routinized fashion, under exacting supervision and the rigid constraints imposed by the ACE auditing system. To the extent that Special Investigators do make decisions and judgments during the course of their investigations, Plaintiffs maintain that they do not relate to matters of significance.

In support of their position, Plaintiffs offer a 2005 DOL Opinion Letter concerning the

18

exempt status of background investigators. Opinion Letter from Dept. of Labor, Wage and Hour Div. (Aug. 19, 2005), 2005 WL 3308592. The background investigators were responsible for gathering factual information in accordance with a set of guidelines. They were assigned particular leads for each investigation but were permitted to follow other leads as well. In addition, the background investigators were required to obtain record information regarding specific aspects of the investigation subject's life. The factual information acquired by the investigations was, in turn, used by a governmental agency to determine "whether to employ individuals in positions requiring access to classified national security information." *Id.* The DOL concluded that the background investigators did not fall within the scope of the administrative exemption because their duties did not involve sufficient discretion or independent judgment. Rather, they were "merely applying their knowledge in following prescribed procedures or determining which procedures to follow, or determining whether standards are met." *Id.* This was so even though the background investigators had "some leeway" in conducting their investigations:

> In this regard, planning one's own workload, such as prioritizing the pursuit of particular leads, assessing whether the leads provided are in the Investigator's area of responsibility, or have provided information that requires further investigation, determining which potential witnesses to see and which documents to review, and making similar decisions that promote effective and efficient use of that individual's own work time in performing assigned investigative activities, do not constitute exercising discretion and independent judgment with respect to matters of significance. It is not sufficient that an employee makes decisions regarding 'when and where to do different tasks, as well as the manner in which to perform them.' Rather, the regulations emphasize both the nature and the level of importance of an employee's work in relation to managing the employer's (or customer's) business operations . . . .

*Id.*

Conversely, Nationwide asserts that its Special Investigators are much more than mere fact-gatherers. In its view, they are insurance fraud experts who exercise a considerable degree of

discretion and independent judgment with respect to matters of significance. It rejects the notion that such discretion and independent judgment is constrained in a meaningful way by ACE. Once again, Nationwide emphasizes the similarities between the duties traditionally performed by insurance claims adjusters, which the DOL and case law generally deem to meet the discretion and independent judgment element of the administrative exemption, *see* 29 C.F.R. § 541.203(a); *Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865, 874-76 (7th Cir. 2008); *In re Farmers Ins. Exch.*, 481 F.3d 1119, 1129-32 (9th Cir. 2007); *Cheatham* 465 F.3d at 585-86; *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1001 (8th Cir. 2003), and those performed by its Special Investigators.

For instance, Nationwide relies heavily on *Roe-Midgett*. In *Roe-Midgett*, an employer providing claims-processing services to insurance companies contended that its Material Damage Appraisers ("MDAs") fell within the FLSA's administrative exemption. Even though MDAs did not determine coverage or liability – traditional claims adjuster functions – the Seventh Circuit agreed. With respect to the third element of the exemption, the court reasoned:

> When MDAs inspect a vehicle for damage, they must exercise independent judgment to verify whether the actual damage is consistent with the claimed damage. In doing so, the MDA must evaluate whether the damage is likely preexisting, inconsistent with the alleged cause, or otherwise suspicious. The MDA must also be on the lookout for fraud when interviewing the claimant and any witnesses. These are judgment calls with respect to matters of significance; MDAs are using their knowledge and experience to distinguish covered damage from fraudulent or preexisting damage. While MDAs do not make final liability decisions, their assessment of the damage and its cause bear directly on the ultimate coverage determination.

*Id.* at 874.

According to the Sixth Circuit, "[t]o determine whether an employee, constrained by guidelines and procedures, actually exercises any discretion or independent judgment, [a court must] consider whether those guidelines and procedures contemplate independent judgment calls or allow

20

for deviations." *Renfro*, 497 F.3d at 577 (citations omitted). While ACE contemplates the application of a certain measure of knowledge and skill, at the same time, it contemplates independent judgment calls and allows for deviations. ACE does not appear to transform a fraud investigation into a formulaic or purely mechanical endeavor. In fact, many of the FRQs that comprise ACE are geared towards promoting efficiency, proper documentation, and effective communication. The FRQs that do speak to specific investigative tasks are primarily concerned with whether the information elicited is "relevant" and "appropriate." It is left to the Special Investigator to decide things such as who to interview, what documents to review, what leads to pursue, and similar tactical matters. Though some direction is provided by the Special Investigator's action plan – which defines the scope of the investigation and to which ACE requires adherence – Special Investigators are integrally involved in developing such action plans for their respective investigations. Moreover, ACE permits Special Investigators to deviate from their action plans so long as they document the changes in Nationwide's electronic claims system. Nonetheless, according to the 2005 Opinion Letter cited by Plaintiffs, such fact-finding logistics do not necessarily rise to the level of discretion and independent judgment contemplated by the DOL regulations, for they do not amount to matters of significance.[2] *See* Opinion Letter from Dept. of Labor, Wage and Hour Div. (Aug. 19, 2005), 2005 WL 3308592; *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (stating that the DOL's interpretation of its own regulations are "controlling unless plainly erroneous or inconsistent with the regulation"); 29 C.F.R. § 541.202(a) ("The term 'matters of significance' refers

---

[2]There parties dispute whether Special Investigators are subject to immediate direction and supervision while performing investigative tasks. Because the discretion and independent judgment that Special Investigators exercise in deciding "when and where to do different tasks, as well as the manner in which to perform them," is not sufficient for purposes of satisfying this element of the administrative exemption, the extent to which such decisions are controlled or monitored is not material.

to the level of importance or consequence of the work performed.").

Be that as it may, genuine issues of material fact exist as to whether Nationwide's Special Investigators make far weightier determinations – determinations that do relate to matters of significance and that cannot be arrived at by simply applying knowledge and skills to ACE guidelines. Most significantly, there is a factual dispute as to whether Special Investigators' primary duty encompasses providing their opinions and conclusions regarding their investigative findings. Determinations as to whether insurance claims are fraudulent amount to "judgment calls with respect to matters of significance." *Roe-Midgett*, 512 F.3d at 874.

Plaintiffs point to an FRQ from the ACE auditing system as evidence that Special Investigators are precluded from presenting their subjective assessments of the factual information that they uncover during the course of their investigations. The FRQ states: "Were the findings summarized in a relevant and factual manner in the electronic claim system or other SIU report(s)?" The FRQ's "intent" then clarifies the focus of this question:

> Prepares factual, clear, concise, and accurate written investigation reports, given investigative findings, documentation and a specific audience, so that the report accurately reflects the investigative findings, is concise, expresses the investigator's evaluation of the factual information, and is appropriate for the intended parties.

(Herman Dep. Exh. 8.)

As further support, Plaintiffs offer the deposition testimony of Plaintiff Rider, who stated that SIU management directed Special Investigators "to no longer include personal comments of [their] findings in the logs." (Rider Dep. at 208.) Also cited are the declarations of various Plaintiffs, in which each averred that, upon the conclusion of an investigation, he or she was "not allowed to make recommendations or give [his or her] opinion as to whether a fraud had occurred." (Bailey Dec. at ¶8; Endicott Dec. at ¶8; Fisher Dec. at ¶8; A. Foster Dec. at ¶8; Hosford Dec. at ¶8; Patterson Dec.

22

at ¶8; Shaw Dec. at ¶8; J. Smith Dec. at ¶8; Villanueva Dec. at ¶8; M. Williams at ¶8.)

Nationwide counters with evidence that its Special Investigators are responsible for offering their subjective evaluation of the results of their fraud investigations. The deposition testimony and exhibits put forward by Nationwide suggest that Special Investigators – to at least some degree – present their opinions and conclusions regarding their factual findings. For example, Plaintiff Robert Burcina testified that his "job is to fully and fairly evaluate the merits of the claim." (Burcina Dep. at 85). Consistent with this view, Plaintiff Robert Schmidt logged the following entry in Nationwide's electronic claims system after concluding an investigation: "No information was developed which would indicate that our insured has attempted to deceive or to defraud the company. I have spoken with Claims Professional Shane Kluck and File Manager Zane Janousek advising of my findings." (Schmidt Dep. at 119, Exh. 18). Likewise, an entry logged by Plaintiff Foster reads: "I advised that I would be recommending to the claims department that no further payments be made for treatment of the claimant because, I had acquired over nine hours of videotape showing the claimant engaged in activities which would be precluded if in fact she still required treatment." (Foster Dep. Exh. 7).[3]

Evidence supporting the contention that Special Investigators' primary duty encompasses providing their opinions and conclusions with respect to whether claims are fraudulent distinguishes this case from the factually similar case of *Fenton v. Farmers Ins. Exchange*, 663 F.Supp. 2d 718 (D. Minn. 2009). In *Fenton*, the court held that investigators employed by an inter-insurance

---

[3]Nationwide's position is further bolstered by the FRQ cited by Plaintiffs, which provides that the investigative reports prepared by Special Investigators should "express[ ] the investigator's evaluation of the factual information." (Herman Dep. Exh. 8.) In addition, Plaintiffs admit that Special Investigators are required to report "questionable" claims to law enforcement. (Pls' Mot. In Opp. to Def's Mot. For Summ. Jdgmt., p. 10.) This implies that a Special Investigator is required to render at least some form of an opinion, at some point in the investigative process, as to whether a claim is fraudulent.

23

exchange did not exercise sufficient discretion and independent judgment to fall within the FLSA's administrative exemption. Like the Special Investigators in the instant matter, the investigators in *Fenton* were responsible for investigating potentially fraudulent insurance claims. The *Fenton* court explicitly stated that its conclusion rested largely upon the fact that the defendant-employer "concede[d] that the investigators' subjective opinions and conclusions are excluded from their written reports." *Id.* at 727. In fact, the guidelines used to evaluate the investigators' work product specifically provided that the investigators' "purpose is to provide . . . factual information that allows the Claims Professionals . . . to make good decisions, not tell them what decision to make, or provide conjecture on what really happened." *Id.* at 723. In contrast, Nationwide maintains that its Special Investigators, as fraud experts, have a responsibility to provide their opinions and conclusions regarding the legitimacy of the claims that they are charged with investigating. Furthermore, ACE does not unambiguously preclude Special Investigators from doing so. While ACE states that investigative findings should be reported in a "factual manner," at the same time it provides that investigative reports should "express[ ] the investigator's evaluation of the factual information" (Herman Dep. Exh. 8).

In sum, the evidence on record is such that a reasonable trier of fact could find for either Plaintiffs or Nationwide on the issue of whether Special Investigators' primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. Since genuine issues of material fact remain, the parties' Motions, insofar as they relate to Nationwide's liability under the FLSA, are **DENIED**. It should be noted that the Court arrives at the same conclusion when taking into account Nationwide's more expansive view of Special Investigators' primary duty, which includes their work related to fraud-awareness training. The evidence on record

24

is not sufficiently developed with respect to the nature of such training, what it entails, and how often it is performed.

Because the Court makes no finding in this Opinion and Order with respect to Nationwide's liability under the FLSA, the Court declines, at this juncture, to address: (1) the applicable statute of limitations period for Plaintiffs' FLSA claim, (2) whether Plaintiffs would be entitled to liquidated damages under the FLSA, and (3) the proper method of calculating Plaintiffs' purported damages under the FLSA. The Court will consider these issues, if appropriate, after all matters relating to the application of the administrative exemption to Plaintiffs have been fully adjudicated. Accordingly, both of the parties' Motions, to the extent that they relate to these issues, are **DENIED**.

## B. STATE LAW CLAIMS

New York and California law also require employers to pay an overtime premium to any employee who works in excess of a prescribed number hours in a given period. N.Y. Lab. Law § 160; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; Cal. Code Regs. tit. 8, § 11040(3)(A)(1). Moreover, like the FLSA, both bodies of state law exempt administrative employees from their coverage. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4); Cal. Code Regs. tit. 8, § 11040(1)(A). Nationwide moves for summary judgment on Plaintiffs' New York and California claims on the basis that Plaintiffs qualify as administrative employees under the wage and hour laws of each state.

The administrative exemptions under New York and California law are defined and applied in a manner similar to the FLSA's exemption. *See In re Novartis Wage & Hour Litig.*, 593 F.Supp. 2d 637, 646 (S.D.N.Y. 2009); *Combs v. Skyriver Communications, Inc.*, 159 Cal. App. 4th 1242,

25

1255, 72 Cal. Rptr. 3d 171, 181 (2007); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (requiring

that overtime be paid "in the manner and methods provided in and subject to the exemptions of" the

FLSA); Cal. Code Regs. tit. 8, § 11040(1)(A)(2)(f) (requiring the "activities constituting exempt

work and non-exempt work [to] be construed in the same manner as such terms are construed" under

FLSA regulations). While there are slight substantive differences in how the state and federal

exemptions are defined,[4] these dissimilarities do not justify a departure from the Court's analysis of

Plaintiffs' FLSA claim. In any event, such differences have the effect of affording employees more

protection under New York and California law than the FLSA. Therefore, the Court's conclusion

that summary judgment for Nationwide on Plaintiffs' FLSA claim is inappropriate applies equally

to Plaintiffs' state law claims. Because genuine issues of material fact precluded summary judgment

for Nationwide on Plaintiffs' FLSA claim, it follows that Nationwide has failed to establish, as a

matter of law, that Plaintiffs fall within New York or California's administrative exemptions.

Therefore, Nationwide's Motion for Summary Judgment, as it relates to Plaintiffs' state law claims,

is **DENIED**.


## IV.

In accordance with the foregoing, Plaintiffs' Motion for Partial Summary Judgment is

**DENIED**, and Defendant's Motion for Summary Judgment is **DENIED**.

---

[4]For instance, the state law exemptions require an administratively exempt employee to "customarily and regularly" exercise discretion and independent judgment. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(ii)(b); Cal. Code Regs. tit. 8, § 11040(1)(A)(2)(b). In addition, California's exemption requires an exempt employee to be "primarily engaged" in administrative activities. Cal. Code Regs. tit. 8, § 11040(1)(A)(2)(f). "Primarily" is defined as "more than one-half of the employee's worktime." Cal. Lab. Code § 515(e). In contrast, the FLSA only requires that activities comprise the employee's "primary duty." 29 C.F.R. § 541.200(a).

**IT IS SO ORDERED**.

<u>      3 -9~20'0      </u>
**DATE**

 

<u>                                     </u>
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**